FILED

2017 MAY 18 AM 11:53

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

**Petitioner,**

**v.**

**Case No.** 2:17-cv-272 FtM-29MRM

ADVANCED PAIN MANAGEMENT AND SPINE SPECIALISTS OF CAPE CORAL AND FORT MYERS,

**Respondent.**

______________________________________/

THE UNITED STATES OF AMERICA'S PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND INCORPORATED MEMORANDUM OF LAW

Pursuant to 31 U.S.C. § 3733(j)(1), the United States petitions to enforce Civil Investigative Demand ("CID") No. 2017-001 issued on January 12, 2017, to Advanced Pain Management & Spine Specialists of Cape Coral and Fort Myers ("Advanced Pain"). The CID seeks documents that are relevant to an investigation into whether Advanced Pain, its affiliated entities, and managing principals violated the False Claims Act, 31 U.S.C. §§ 3729-3733, (the "FCA") and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (the "AKS").

As fully explained below, the United States is seeking the production of certain documents that Advanced Pain has improperly withheld as privileged because those communications included third parties that were not employees of the company.

## Jurisdiction and Venue

1. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3733(j)(1).

2. Venue is proper under 31 U.S.C. § 3733(j)(1) and 28 U.S.C. § 1391(b) because Advanced Pain transacts business in the Middle District of Florida.

## Parties

3. The Petitioner is the United States of America.

4. The Respondent is Advanced Pain, a Florida company with its principal place of business in Fort Myers, Florida.

## Issuance and Service of the CID

5. The Department of Justice must investigate violations of the FCA. See 31 U.S.C. § 3730(a).

6. The FCA is the government's primary tool to recover losses resulting from fraud. Avco Corp. v. U.S. Dep't of Justice, 884 F.2d 621, 622 (D.C. Cir. 1989). The FCA imposes statutory damages and civil penalties for knowingly submitting, or causing to be submitted, a false or fraudulent claim for payment or approval to the government. 31 U.S.C. § 3729(a)(1). "Knowingly" means "actual knowledge of the information" and "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. 31 U.S.C. § 3729(b). Specific intent to defraud is unnecessary. Id.

7. A violation of the FCA can occur many ways, including by billing for unnecessary services, falsely certifying compliance with a statute or regulation as a condition of payment (e.g., the AKS or the Stark Law), or failing to provide services in accord with statutory or regulatory requirements.

8.     Advanced Pain is a pain management medical practice that is wholly owned by Michael Frey, M.D. and Jonathan Daitch, M.D.

9.     In 2015, agents of the Defense Criminal Investigative Services ("DCIS") and the Department of Health and Human Services, Office of Inspector General ("HHS-OIG") in conjunction with the United States Attorney's Office for the Middle District of Florida began an investigation of Advanced Pain.  The investigation is currently looking to a number of potential issues relating to Advanced Pain and its physicians including, but not limited to, possible violations of the AKS, the submission of claims for potentially medically unnecessary procedures, and the possible overutilization of urine drug testing.

10.    Former United States Attorney for the Middle District of Florida, A. Lee Bentley, III, executed the CID for documents on or around January 10, 2017, under his authority as the Attorney General's designee.  See 31 U.S.C. § 3733(a)(1) and Attorney General Order No. 3134-2010.  A copy of the CID is attached as Exhibit 1.  Counsel for Advanced Pain accepted service on or around January 12, 2017.

11.    Under Section 3733(a)(1)(A), a CID may seek production of documentary material for inspection and copying.  The CID must (1) "describe each class of documentary material to be produced with such definiteness and certainty as to permit such material to be fairly identified"; (2) provide a reasonable period for gathering and copying the information or offering the material for inspection; and (3) identify the false claims investigator to whom the respondent should produce or offer the material for inspection.  31 U.S.C. § 3733(a)(2)(B).

12.     The CID seeks documentation from Advanced Pain relating to the

investigation.  Among the documents requested pursuant to the CID were "[a]ll email

communications with Physicians Resource Center, LLC, including, but not limited to:

    a.  All October 19, 2015 emails from or to, among others, Rochelle Cannon
       regarding employee incidents and corrective action.

    b.  All November 17, 2015 emails from or to, among others, Rochelle Cannon
       regarding billing for urine testing.

    c.  All November 18, 2015 emails from or to, among others, Rochelle Cannon
       regarding drug screening or UDT billing.

    d.  All January 15, 2016, emails from or to, among others, Rochelle Cannon
       regarding employee incident.

    e.  All February 11, 2016 emails from or to, among others, Rochelle Cannon
       regarding determination of economic hardship.

    f.  All April 5-6, 2016 emails from or to, among others, Rochelle Cannon
       regarding laboratory operations.

    g.  All August 5, 2016 emails from or to, among others Rochelle Cannon
       regarding addendum to contract."

Exhibit 1.

13.     Advanced Pain has refused to provide certain documents in response to this

request on the basis of its corporate attorney-client privilege and has produced a privilege

log.  A copy of Advanced Pain's privilege log is attached as Exhibit 2.  Many of the

documents that Advanced Pain is withholding from the production include

communications with employees of Physicians Resource, LLC ("Physicians Resource") and

Barbara Daitch.  This includes documents numbered 1, 4-14, 16-22, 26, 63-71, and 74-87

from Advanced Pain's privilege log.

14. Physicians Resource is a third party medical billing company located in Ormond Beach, Florida that was contracted by Advanced Pain in August of 2015.

15. Barbara Daitch is the wife of Dr. Jonathan Daitch who, during the relevant time, was neither an employee nor an independent contractor for Advanced Pain.

16. For the reasons discussed in the memorandum of law, Advanced Pain's position that communications involving employees of Physicians Resource and Barbara Daitch may be withheld represents a legally impermissible expansion of Advanced Pain's corporate attorney-client privilege.

17. Even if the Court somehow found that Advanced Pain's attorney-client privilege could apply to these non-employed third parties, at a minimum, this Court should conduct an *in camera* review of those documents to determine whether they would otherwise be covered by Advanced Pain's attorney-client privilege.

## MEMORANDUM OF LAW

### I. Introduction

In order for the attorney-client privilege to apply, it is axiomatic that the communication must be confidential. In the corporate context, an otherwise privileged communication loses its protection when the communication is made to third parties or is disseminated beyond the group of corporate employees who have a need to know in the scope of their corporate responsibilities. In this case, Advanced Pain is improperly attempting to protect as privileged communications involving third parties that were ***not*** corporate employees of Advanced Pain. Advanced Pain has taken the position that communications involving employees of Physicians Resource, a third-party independent contractor whose company performed billing services for Advanced Pain for just over a

year, and Barbara Daitch, a doctor's spouse who was not associated with Advanced Pain as either an employee or an independent contractor, are privileged.

There is no binding authority in the Eleventh Circuit extending a corporation's attorney-client privilege to include communications with third parties that were not employees of the corporation. In certain "unusual" circumstances, some courts have allowed a corporation to claim privilege over communications with independent contractors for the corporation. Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 492 (Fed. Cl. 2000) ("Extending the attorney-client privilege to include independent contractors who work for the client, while not unprecedented, is somewhat unusual."). However, in order to warrant this special protection, the courts have required that the independent contractor be "in all relevant respects the ***functional equivalent*** of an employee" of the corporation claiming the privilege. In re Bieter Co., 16 F.3d 929, 938 (8th Cir. 1994) (emphasis added).

In this case, employees of Physicians Resource were in no way the "functional equivalent" of Advanced Pain employees. They worked in different offices on separate sides of the state of Florida. The contractual relationship between the two companies lasted just over one year. Advanced Pain was just one of Physicians Resource's many clients and even Physicians Resource's emails clearly indicated that they were not Advanced Pain employees. There was simply nothing that was special or unique about Physicians Resource's role as an independent contractor for Advanced Pain that would warrant special treatment under the law.

Communications involving Barbara Daitch are not covered by Advanced Pain's attorney-client privilege because she was neither an employee nor an independent contractor for Advanced Pain. There is simply no basis in the law to extend a corporation's attorney-

client privilege to the spouse of a corporate employee. Regardless, by her own admission, Barbara Daitch would not have been among the corporate employees who needed to know of the contents of the communications. As Barbara Daitch testified, she did not have authority over any aspect of the practice including medical determinations, billing, the laboratories, or regulatory compliance. Therefore, even if Barbara Daitch's occasional, unpaid volunteer work somehow qualified her as an employee, Advanced Pain's attorney-client privilege would not protect her communications relating to matters that were not within the scope of her undefined responsibilities.

To the extent the Court believes that Advanced Pain's attorney-client privilege could extend to the communications with employees of Physicians Resource and Barbara Daitch, the United States requests that the Court conduct an *in camera* review of the documents to determine the applicability of Advanced Pain's attorney-client privilege. There are a number of reasons why it does not appear that certain documents that Advanced Pain withheld would actually be privileged. For example, given attorney David Vaughn's email disclaimer that "[a]dvice given to clients outside of Louisiana consists of coding advice or other consulting advice only, ***not legal advice*** . . ." it appears that many of the communication may not have been "for the purpose of securing legal advice." See Redacted November 17, 2015 email from D. Vaughn (attached as Exhibit 3). In addition, the fact that some of the emails that contained attorney communications were simply forwarded to other individuals makes it likely that the communications were disseminated beyond those persons within the corporation who needed to know of its contents. An *in camera* review is necessary to determine if Advanced Pain's attorney-client privilege actually covered the communications at issue.

For all of these reasons, further discussed below, this Court should order Advanced Pain to produce all of the documents it is withholding as privileged involving either employees of Physicians Resource or Barbara Daitch. This includes documents number 1, 4-14, 16-22, 26, 63-71, and 74-87 from Advanced Pain's privilege log. Even if the Court somehow found that Advanced Pain's attorney-client privilege could apply to these non-employed third parties, at a minimum, this Court should conduct an *in camera* review of those documents to determine whether they would otherwise be covered by Advanced Pain's attorney-client privilege.

## II.     Factual Background

### A.     Investigative Background

The United States is conducting an ongoing investigation of Advanced Pain, a pain management medical practice located in Fort Myers, Florida; its affiliated entities, Park Center for Procedures ("Park Center") and Anesthesia Partners; and its managing physicians, Dr. Michael Frey and Dr. Jonathan Daitch, concerning potential violations of the FCA. The investigation is currently looking to a number of potential issues relating to Advanced Pain and its physicians including, but not limited to, possible violations of the AKS, the submission of claims for potentially medically unnecessary procedures, and the possible overutilization of urine drug testing.

Advanced Pain is wholly owned by Doctors Frey and Daitch. In addition to their ownership of Advanced Pain, Doctors Daitch and Frey own Park Center, an ambulatory surgery center located downstairs from Advanced Pain, where Doctors Daitch and Frey perform surgical procedures on Advanced Pain patients. On June 4, 2014, Doctors Daitch and Frey also created Anesthesia Partners. Anesthesia Partners is also 100% owned by

Doctors Daitch and Frey and it hires Certified Registered Nurse Anesthetists ("CRNAs") to administer anesthesia to patients for procedures performed at Park Center.

On May 18, 2016, Advanced Pain, Park Center, and Anesthesia Partners were served with subpoenas from DCIS. Shortly thereafter, the United States was notified that Advanced Pain and its related entities retained Fisher Broyles as outside counsel.

**B. Physicians Resource Receives A Civil Investigative Demand**

Physicians Resource is a third party medical billing company located in Ormond Beach, Florida that was contracted by Advanced Pain and Park Center in August of 2015. According to the engagement letter, Physicians Resource was hired to perform services such as reviewing the charges to ensure proper coding, transmission of claims to the insurers, posting of payments, and processing and reviewing claim denials. See August 12, 2015 Engagement Letter (attached as Exhibit 4).

Physicians Resource did not have an office at Advanced Pain. See December 19, 2016 Civil Investigative Demand Deposition of Barbara Daitch ("B. Daitch Dep.") at. p. 65-66, line 23-3 (cited portions attached as Exhibit 5). Rather, nearly all of the work that Physicians Resource did for Advanced Pain was performed at Physicians Resource's office in Ormond Beach and most of the communications with Advanced Pain were over email or by phone. On August 16, 2016, just over a year after it started, the contractual relationship between Advanced Pain and Physicians Resource was terminated. See August 16, 2016 Ltr. to Daitch and Frey (attached as Exhibit 6).

On August 17, 2016, a CID for documents was served on Physicians Resource in relation to the United States' investigation of Advanced Pain. See Physicians Resource CID (attached as Exhibit 7). Among the documents requested in accordance with the CID were

all written or electronic communications between Physicians Resource and Advanced Pain, its affiliated entities, and Drs. Frey and Daitch. Id. Physicians Resource produced documents in accordance with the CID. However, because David Vaughn, an attorney working with Advanced Pain, was included in some of the emails, out of an abundance of caution, Physicians Resource withheld certain emails and produced a privilege log. See Physicians Resource Privilege Log (attached as Exhibit 8).

According to his email disclaimer, David Vaughn is an attorney "[l]icensed to practice law in Louisiana only." See Exhibit 3. In addition to being retained by clients as an attorney, David Vaughn is also sometimes retained to provide "coding" or "consulting" advice to healthcare clients. As his David Vaughn's email disclaimer makes clear, this type of consulting work performed outside the state of Louisiana is not considered legal advice:

> Advice given to clients outside of Louisiana consists of ***coding advice or other consulting advice only***, ***not legal advice***, and any legal advice on state law issues in other states should come from an attorney licensed in that state.

Id. (emphasis added).

Physicians Resource's privilege log includes eleven separate email strings, many of which include David Vaughn. See Exhibit 8. Most of these emails occurred well before the DCIS subpoena was served on Advanced Pain and many appear to be directly relevant to issues that are currently under investigation. Id. Physicians Resource's principal, Rochelle Cannon, was included in all of these emails. Id. Five of the eleven emails listed in the privilege log also include Barbara Daitch. Id.

Barbara Daitch is the wife of Dr. Jonathan Daitch. During the relevant time, Barbara Daitch was not an employee of Advanced Pain. See Exhibit 5, B. Daitch Dep. at. p. 14, line 7-10; p. 18, line 12-22. She is not a corporate officer of Advanced Pain or any of

its affiliated entities, and she has no personal ownership interest in the companies. Id. at p. 29, line 5-23. To the extent that Barbara Daitch ever performed any independent consulting work for Advanced Pain, her consulting relationship with the company ended in September of 2012. Id. at p. 14, line 7-25. She has not been paid for anything she did for the company since 2012. Id. at p. 53, line 3-7.

Barbara Daitch testified that she did not have authority over any aspect of the practice, including medical decision-making, billing, compliance, or the laboratories owned by doctors Daitch and Frey. Id. at p. 34-36, line 15-8. Barbara Daitch did not have an office at Advanced Pain and only went to the practice a couple times a month. Id. at p. 49, line 14-18; p. 162, line 10-14. To the extent she was involved in any communications relating to Advanced Pain, she used her personal email address. Id. at p. 49, line 19-24. Importantly, she testified that she did not perform any work at the direction of attorney David Vaughn. Id. at p. 36-37, line 25-4. At most, Barbara Daitch was a doctor's spouse and an occasional unpaid volunteer at Advanced Pain.

**C. Advanced Pain Receives A Civil Investigative Demand**

On January 12, 2017, a CID containing a number of new document requests relating to the investigation was served on counsel for Advanced Pain. See Exhibit 1. Among the documents requested pursuant to the CID were the documents Physicians Resource included on the privilege log it produced. Id. at Request # 8.

Advanced Pain has refused to provide these documents and instead has taken the position that any document that was sent to or received by employees of Physicians Resource or Bobbie Daitch containing attorney-client communications are protected by Advanced Pain's corporate attorney-client privilege. See Exhibit 2. Because Advanced

Pain's expansive position that its corporate attorney-client privilege extends to all employees of third-party independent contractor Physicians Resource and a doctor's unemployed spouse is untenable under federal law, the United States now moves to compel the production of the documents improperly withheld as privileged.

## III.    Argument

The central issue in this petition is whether certain corporate email communications between the principals of Advanced Pain, an attorney performing work on behalf of Advanced Pain, and certain third-party individuals that were not employees of Advanced Pain are protected by Advanced Pain's attorney-client privilege.[1]

The Federal common law of attorney-client privilege applies to this investigation pursuant to the FCA.  Hancock v. Hobbs, 967 F.2d 462, 467 (11th Cir. 1992) ("[T]he federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question . . . ."). "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." In re Grand Jury Proceedings 88–9 (MIA), 899 F.2d 1039, 1042 (11th Cir.1990) (citation omitted). The party invoking the privilege must establish that:

(1)    the professed privilege holder is or sought to become the attorney's client;

(2)    the person to whom the communication was made was a licensed attorney or his subordinate acting in the capacity of a lawyer at the time the communication was made;

(3)    the communication concerns a fact that was communicated to the attorney by his client outside the presence of strangers;

(4)    for the purpose of obtaining a legal opinion, legal services, or assistance in some legal proceeding;

---

[1] Advanced Pain is not making the claim that any of the communications or documents were protected by the work product doctrine and, therefore, only the applicability of the attorney-client privilege is at issue.

(5) the communication was not made for the purpose of committing a crime or tort;
(6) the professed holder actually claimed the privilege; and
(7) he did not waive the privilege.

United States ex. rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr., 6:09-cv-1002-Orl-31TBS, 2012 WL 5415108, at *2 (M.D. Fla. Nov. 6, 2012) (quotations omitted) (citing United States v. Noriega, 917 F.2d 1543, 1550 (11th Cir. 1990)). In order for the attorney-client privilege to apply, the communication must be confidential. Id. at 1551; Bogle v. McClure, 332 F.3d 1347, 1358 (11th Cir. 2003) ("The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential.") (quoting United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991)).

"To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was '(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential.'" Bogle, 332 F.3d at 1358 (emphasis supplied) (quoting United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985)). Accordingly, as a general rule, a client and his attorney's communications are not deemed confidential when made in the presence of a third party. See Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990) *superseded by statute in non-relevant part* ("The attorney-client privilege evaporates upon any voluntary disclosure of confidential information to a third party."); United States v. Gordon–Nikkar, 518 F.2d 972, 975 (5th Cir. 1975) ("A communication divulged to

'strangers' or outsiders can scarcely be considered a confidential communication between attorney and client.").[2]

Since a corporation is "an artificial creature of law," courts have recognized the complexities with the application of the attorney-client privilege when the client is a corporation. Upjohn Co. v. United States, 449 U.S. 383, 389-390 (1981); Admiral Ins. Co. v. United States Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1492 (9th Cir. 1989) ("As fictitious entities, corporations can seek and receive legal advice and communicate with counsel only through individuals empowered to act on behalf of the corporation."). As the Supreme Court found in Upjohn, when a corporation is a client, communications between corporate employees acting within the scope of their corporate duties and attorneys for the corporation through which the corporation may obtain legal advice, may be privileged under certain circumstances. 449 U.S. at 394 (rejecting a narrow "control group" test under which only a small group of management officials can be subject to attorney-client privilege and instead adopting a "case by case" approach for determining the appropriateness of a corporation's invocation of its attorney-client privilege ).

However, it is well established that the corporate attorney-client privilege does not extend to cover communications with any individual or company affiliated in some way with the corporation. See, e.g., Acosta v. Target Corp., 281 F.R.D. 314, 321 (N.D. Ill. 2012) ("[T]he privilege does not apply to an e-mail 'blast' to a group of employees that may include an attorney . . . ."). Instead, "because the privilege only applies to communications

---

[2] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

made in confidence, a communication loses its protection if made in the presence of third parties . . . or [is] disseminated beyond the group of corporate employees "who have a need to know in the scope of their corporate responsibilities." United States v. Davita Inc., 301 F.R.D. at 676, 682 (N.D. Ga. 2014) (citing In re Vioxx Prod. Liab. Litig., 501 F.Supp.2d 789, 796 (E.D. La. 2007)).

Most of the cases addressing this issue relate to whether or not a particular communication was made in confidence based on whether a particular ***corporate employee*** was among those employees that needed to know of its contents. Indeed, the communications at issue in the Supreme Court's decision in Upjohn, "were made by Upjohn ***employees*** to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel." Upjohn, 449 U.S. 383 at 394 (emphasis added). However, neither of the individuals at issue in this case were corporate employees of Advanced Pain. Rochelle Cannon was the principal of Physicians Resource, a third-party independent contractor whose company performed billing services for Advanced Pain for just over a year. Barbara Daitch was not an employee or an independent contractor for Advanced Pain.

Neither the United States Supreme Court nor the Eleventh Circuit Court of Appeals have directly addressed the issue of whether a corporation's attorney-client privilege could extend to cover communications with third parties who were not employees of the corporation. Even though there is no controlling authority in the Eleventh Circuit on whether corporate communications involving non-employed third parties may be privileged, a few district courts within this circuit have found that, in certain circumstances, corporate communications with an independent contractor may be privileged. See Hope for Families

& Cmty. Serv., Inc. v. Warren, No. 3:06-CV-1113-WKW, 2009 WL 1066525, *10 (M.D. Ala. Apr. 21, 2009) (extending the privilege to a contractor and investor who was "intimately involved" in the corporation's efforts to achieve its "single objective").; Every Penny Counts, Inc. v. Am. Express Co., No. 8:07-cv-1255-T-26MAP, 2008 WL 2074407 (M.D. Fla. May 15, 2008) (extending a corporation's privilege to communications involving a consultant who was working with the corporation's attorneys "in anticipation of potential patent infringement litigation"); Burlington Indus. Inc. v. Rossville Yarn, Inc., No. 495-CV-0401, 1997 WL 404319 (N.D. Ga. June 3, 1997) (extending the privilege to an independent contractor who was retained "to assist Plaintiff's in-house patent counsel" in an "anticipated adversarial proceeding"). Those few cases have looked to the Eighth Circuit's opinion in In re Bieter Co., 16 F.3d 929 (8th Cir. 1994) as persuasive authority on the subject of whether communications with third-party independent contractors may be covered by a corporation's privilege.

In Bieter, the Eighth Circuit found that the attorney-client privilege applied to communications between a partnership's attorney and an independent contractor where that individual was the "functional equivalent" of an employee of the company. Id. at 938. The individual at issue in Bieter had been involved with the company for a number of years, worked out of the company's office in conjunction with its day-to-day manager, had daily interactions with the manager, attended meetings with corporate counsel either alone or with the manager, was represented by the partnership's counsel during his deposition, and held primary responsibility for securing tenants for the real estate development at issue in the litigation. Id. at 933-934. For those reasons, the Eighth Circuit found that the contractor "was in all relevant respects the ***functional equivalent*** of an employee" and was

therefore a client for purposes of the attorney-client privilege. Id. at 938 (emphasis added). But see Miramar Constr. v. Home Depot, Inc., 167 F.Supp.2d 182, 185 (D.P.R. 2001) (refusing to apply the attorney-client privilege to protect communications between corporate counsel and the corporation's former independent contractor because doing so would represent a "tremendous expansion of the privilege" to "any individual contractually associated with a corporation").

Because Bieter found that the contractor in that case was the "functional equivalent" of an employee, the Eighth Circuit analyzed the privilege issue as if the contractor was any other Bieter employee and applied its five part test to examine the applicability of the attorney-client privilege to an independent contractor in the corporate-employee setting. Bieter, 16 F.3d at 936 (citing Diversified Indust. Inc. v. Meredith, 572 F.2d 596, 599 (8th Cir. 1997)). The test, as adapted in Bieter, provides that the attorney-client privilege may be applicable to an independent contractor who is the "functional equivalent" of an employee if:

(1) The communication was made for the purpose of securing legal advice;
(2) The independent contractor making the communication did so at the direction of a corporate superior;
(3) A corporate superior made the request so that the corporation could secure legal advice;
(4) The subject matter of the communication is within the scope of the independent contractor's duties; and
(5) The communication is not disseminated beyond those persons who, because of the corporate structure, need to know of its contents.

Bieter, 16 F.3d at 936. The burden is on the party claiming the attorney-client privilege in this context to show that the communications at issue meet all five requirements of the Bieter test. See Warren, 2009 WL 1066525, at *6. Accordingly, pursuant to the Eighth Circuit's analysis in Bieter, it is the burden of the party asserting the privilege to show that

(1) the independent contractor was a "functional equivalent" of an employee of the corporation, and (2) the communication involving the independent contractor would otherwise be protected under the corporation's attorney-client privilege. Bieter, 16 F.3d at 938.

Importantly, as Bieter and its progeny make clear, "[e]xtending the attorney-client privilege to include independent contractors who work for the client, while not unprecedented, is somewhat unusual. Not every independent contractor qualifies for this special protection . . . ." Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 492 (Fed. Cl. 2000) (holding that the corporation failed to meet its burden to show that the documents shared with its independent contractors were protected by the attorney-client privilege and ordering the corporation to produce those documents. See also Dublin Eye Assoc., P.C. v. Massachusetts Mut. Life Ins. Co., No. 5:11-CV-128-KSF, 2013 WL 653541, *7 (E.D. KY. Feb. 21, 2013); LG Elec.U.S.A. Inc. v. Whirlpool Corp., 661 F. Supp. 2d 958, 965 (N.D. Ill. 2009) (rejecting the argument that a third party advertising agency was the functional equivalent of a Whirlpool employee); In re Currency Conversion Fee Antitrust Litig., No. MDL 1409, M 21-95, 2003 WL 22389169, *2 (S.D. N.Y. Oct. 21, 2003) (holding that the employees of a third-party consulting company were not "functional employees" of defendant because their role was "akin to that of an accountant or other ordinary third party specialist, disclosure to whom destroys the attorney client privilege"); Calvin Klein Trademark Trust v. Wachner, 198 F.R.D. 53, 55 (S.D.N.Y.2000) (holding that extension of attorney-client privilege to public relations firm hired by company would "broaden the privilege well beyond prevailing parameters"). Therefore, even if this Court agrees that in appropriate circumstances communications between a corporation's attorney and third-

party independent contractors could be privileged, for the reasons discussed below, the communications in this case involving Physicians Resource and Barbara Daitch would not qualify for such protection.

### A. Communications With Employees Of Physicians Resource

Assuming *arguendo* that in the Eleventh Circuit the attorney-client privilege could extend to third-party independent contractors, Advanced Pain cannot meet its burden under the analysis set forth in Bieter with respect to communications involving Physicians Resource's because its employees were not the "functional equivalent" of Advanced Pain employees.

The circumstances of the relationship between Advanced Pain and Physicians Resource are not similar in any way to the special relationship between the company and the individual independent contractor at issue in Bieter. Unlike the independent contractor at issue in Bieter, Physicians Resource did not have an office at Advanced Pain. Instead, almost all of the work Physicians Resource did for the company was performed over 225 miles away, out of Physicians Resource's office in Ormond Beach. In contrast to the relationship with the independent contractor and the company in Bieter, which spanned a number of years, Physicians Resource only performed contract work for Advanced Pain for a little over one year. Rochelle Cannon did not have daily interaction with the principals of Advanced Pain, as did the individual contractor in Bieter. Unlike Bieter, where the independent contactor was a solitary individual person, here the contractor was a company, Physicians Resource, and Rochelle Cannon was just one of the individuals employed by Physicians Resource that interfaced with Advanced Pain. In contrast to Bieter, Physicians Resource did not hold itself out to be one of Advanced Pain's employees. For example,

Rochelle Cannon used a Physicians Resource's email address and even her signature block in those emails clearly indicates that she was not an employee of Advanced Pain:

> *Rochelle Cannon*
> 160 East Granada Blvd.
> Ormond Beach, FL 32176
> P: 386-523-1581 F: 386-673-3210

Exhibit 3 at p.2. Advanced Pain was just one of the multiple clients that Physicians Resource contracted with to provide billing services during the relevant time. In essence, Physicians Resource was like any ordinary independent contractor. In re Currency Conversion Fee Antitrust Litig., 2003 WL 22389169 at *2 (disclosure to an "ordinary third party specialist" destroys the attorney client privilege. There was nothing that was special or unique about Physicians Resource's role as an independent contractor for Advanced Pain that would warrant special treatment under the law with respect to Advanced Pain's attorney-client privilege.[3] Accordingly, all of the documents listed on Advanced Pain's privilege log involving Physicians Resource's personnel such as Rochelle Cannon should be produced. This includes documents numbered 1, 4-13, 16-22, 63-71, 74-81, and 83-87 from Advanced Pain's privilege log.

[3] In contrast to the consultants at issue in the Every Penny Counts and Burlington Indust. cases, Physicians Resource was not retained to work with the company's attorneys to create work product "in anticipation of potential . . . litigation." Every Penny Counts, 2008 WL 2074407 at *2; Burlington Indust., 1997 WL 404319 at *3 (independent contractor at issue was specifically retained to assist the company's attorney in anticipated adversarial proceedings)

Even if employees of Physicians Resource were somehow considered to be the "functional equivalent" of Advanced Pain employees, it is unlikely that the communications at issue would otherwise be protected under the corporation's attorney-client privilege. It does not appear to be possible that Advanced Pain can meet the first prong of the five-part Bieter test, which requires that the communication was made for the purpose of securing legal advice, for any of the emails involving David Vaughn[4] because it is likely that the substance of those emails related to non-legal, medical coding or consulting advice. As the disclaimer on Mr. Vaughn's email makes clear, the advice he gives "to clients outside of Louisiana consists of ***coding advice or other consulting advice only, not legal advice*** . . . ." See Exhibit 3. Therefore, because Advanced Pain is located in Florida, as indicated in David Vaughn's email disclaimer, the communications at issue likely constitute non-privileged business advice. Baklid-Kunz, 2012 WL 5415108, at *3 ("[G]eneral business advice, unrelated to legal advice, is not protected by the privilege even though conveyed by an attorney to the client because the purpose and intent is not to communicate legal advice.") (citations omitted)).

In addition, to the extent an email that Advanced Pain is claiming was privileged was simply forwarded to Rochelle Cannon by someone like Barbara Daitch that communication would not be privileged. For example, on November 18, 2015, Barbara

[4] Although there is a presumption of privilege with respect to communications between a corporate client and its outside litigation counsel, communications between a corporate client and corporate counsel – on the other hand – "'involve a much different dynamic,' and the party invoking the privilege must clearly show that the primary purpose of the communication was, in fact, for legal advice." Davita, 301 F.R.D. at 682 (citing Baklid-Kunz, 2012 WL 5415108, at *3).

Daitch forwarded an email string between the doctors and David Vaughn to Rochelle Cannon. See November 18, 2015 Redacted email from Barbara Daitch to Rochelle Cannon (attached as Exhibit 9).[5] Because she was not involved in this particular attorney-client communication and instead just received that email from Barbara Daitch, the email containing the communications could not have been sent to Rochelle Cannon for the propose of legal advice and, therefore, the claim of privilege fails the third prong of Bieter.

Accordingly, to the extent the Court finds that the attorney-client privilege could extend to third-party independent contractors, and that employees of Physicians Resource acted as the "functional equivalent" of Advanced Pain employees, the United States requests that the Court conduct an *in camera* review of the documents to determine the applicability of Advanced Pain's attorney-client privilege. Under federal law, where there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege, an *in camera* review by the court may be appropriate. United States v. Zolin, 491 U.S. 554, 574–75 (1989) (finding that "a factual basis adequate to support a good faith belief by a reasonable person" that the attorney-client privilege may not apply is a sufficient basis for an *in camera* review). In this case, to the extent these communications would otherwise be covered by Advanced Pain's privilege, the United States has made a sufficient showing to trigger an *in camera* review of whether the communications at issue actually do constitute legal advice and not, as David Vaughn's disclaimer cautions, "coding" or other business advice.

[5] Advanced Pain's privilege log does not include this specific November 18, 2015 email from Barbara Daitch to Rochelle Cannon. Presumably, entry number 14 on Advanced Pain's privilege log relates to the underlying communication with David Vaughn that Barbara Daitch forwarded to Rochelle Cannon.

### B. Communications Involving Barbara Daitch

Unlike Rochelle Cannon, who was at least an independent contractor of Advanced Pain, Barbara Daitch had no employment status whatsoever with Advanced Pain. Barbara Daitch was neither an employee nor an independent contractor, and she did not have any ownership interest in the companies other than being a doctor's wife. See Exhibit 5, B. Daitch Dep. at p. 14, line 7-25, p. 18, line 12-22; p. 29, line 5-29. There is simply no basis in the law to extend a corporation's attorney-client privilege to cover communications involving family members of corporate employees. See Dublin Eye Assoc., P.C. v, No. 2013 WL 653541 at *7 (holding that an individual who was not an employee, not compensated for his time, and had no authority to act on behalf of the company could not be considered an agent of the company for the purposes of the attorney-client privilege); Flo Pac, LLC v. NuTech, LLC, No. WDQ–09–510, 2010 WL 5125447 at *8 (D. Md. Dec. 9, 2010) ("It is noteworthy that the cases extending the privilege to third parties who are not employees of the client suggest that the third party should be paid and retained by the client, or at least be party to a more formal agreement to represent the party when speaking with the attorney for the privilege to apply."); Cherryvale Grain Co. v. First State Bank of Edna, 971 P.2d 1204, 1210 (Kan. Ct. App. 1999) (holding that the presence of the owner's sister, who "was neither an officer nor director nor had an ownership interest" in the company resulted in the communications not being protected by the attorney-client privilege).

Regardless of the fact that she was not officially associated with Advanced Pain in any way, by her own admissions, Barbara Daitch would not have been considered a representative of Advanced Pain for the purposes of the privilege. As Barbara Daitch

admitted, she did not have authority over any aspect of the practice. Exhibit 5, B. Daitch Dep. at p. 34, line 12-21. Specifically, she testified that she did not have decision-making authority over any issues relating to medical determinations, billing, the laboratories, or regulatory compliance. Id. at p. 35-36, line 4-6. Nor did Barbara Daitch perform any work for Advanced Pain under the direction of attorney David Vaughn. Id. at p. 36-37, line 25-4.

In these regards, this case is akin to the circumstances in Dublin Eye Assoc., 2013 WL 653541 at *7. In that case, the individual at issue testified that he was "not an employee or officer" of the corporation, did not work "in any capacity related to the litigation," was not compensated for his time, was not part of any decisions, and had "no part of any final say on anything." Id. Given that testimony, which is remarkably similar to the testimony given by Barbara Daitch in this case, the court held that the individual was not an agent of the company for the purposes of the attorney-client privilege. Id.

For the same reasons, Barbara Daitch would not have been among the individuals that would have needed to know about the contents of the communications and, therefore, Advanced Pain's claims of privilege with respect to communications involving her would easily fail the fifth prong of the Bieter test. Therefore, all of the documents listed on Advanced Pain's privilege log involving Barbara Daitch should be produced. This includes documents numbered 1, 14, 26, 63-65, 75-80, and 82-87 from Advanced Pain's privilege log. At a minimum, these documents should be reviewed by the Court *in camera* to determine whether Advanced Pain's attorney-client privilege would apply.

## IV. **Prayer for Relief**

For all of these reasons, the United States respectfully requests that this Court:

1. enter an order directing Advanced Pain to show cause why CID No. 2017-001 should not be enforced as to all of the documents it is withholding as privileged involving either employees of Physicians Resource or Barbara Daitch, including documents numbered 1, 4-14, 16-22, 26, 63-71, and 74-87 from Advanced Pain's privilege log.
2. in the alternative, and only to the extent Court finds that Advanced Pain's attorney-client privilege could possibly extend to cover these non-employed third parties, enter an order directing Advanced Pain to submit the documents identified on its privilege log to the Court for an *in camera* review to determine whether the documents would otherwise be covered by Advanced Pain's attorney-client privilege.

**CERTIFICATE PURSUANT TO LOCAL RULE 3.01(g)**

Pursuant to Rule 3.01(g), Local Rules of the Middle District of Florida, the undersigned certifies that he contacted the attorney for Advanced Pain and has been advised that Advanced Pain opposes the relief sought by this Petition.

Respectfully Submitted,

W. STEPHEN MULDROW
Acting United States Attorney

By: /s/ Kyle S. Cohen
KYLE SCOTT COHEN
Assistant United States Attorney
Florida Bar No. 0829951
2110 First Street, Suite 3-137
Fort Myers, Florida 33901
Telephone: (239) 461-2200
Facsimile: (239) 461-2219
Email: Kyle.Cohen@usdoj.gov