UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

        Petitioner,

v.                                             Case No:  2:17-cv-272-FtM-29MRM

ADVANCED PAIN MANAGEMENT
AND SPINE SPECIALISTS OF CAPE
CORAL AND FORT MYERS,

        Respondent.
_____/

## REPORT AND RECOMMENDATION[1]

        This matter comes before the Court upon review of the Petition of the United States of America for an order directing Respondent Advanced Pain Management and Spine Specialists of Cape Coral and Fort Myers ("Advanced Pain") to show cause why a Civil Investigative Demand ("CID") should not be enforced as to all of the documents it is withholding on privilege grounds. (Doc. 1). Advanced Pain filed a Response in Opposition (Doc. 7), to which the United States filed a Reply (Doc. 14). For the reasons discussed herein, the Undersigned recommends that the Petition be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] The Undersigned proceeds by Report and Recommendation "because the application sets forth all the relief requested . . . making its resolution dispositive of this matter." *Equal Emp't Opportunity Comm'n v. Royal Caribbean Cruises, Ltd.*, No. 12-MC-22014, 2013 WL 9778951, at *1 n.1 (S.D. Fla. Jan. 4, 2013), *report and recommendation adopted*, No. 12-22014-MC, 2013 WL 12133963 (S.D. Fla. June 7, 2013), *aff'd*, 771 F.3d 757 (11th Cir. 2014); *see also Fed. Trade Comm'n v. Lexium Int'l LLC*, No. 2:17-cv-30-FTM-29CM, 2017 WL 2664360, at *1 (M.D. Fla. June 1, 2017), *report and recommendation adopted*, No. 2:17-cv-30-FTM-29CM, 2017 WL 2655107 (M.D. Fla. June 20, 2017).

# I.   Background

The United States' Petition seeks to enforce a civil investigative demand pursuant to 31 U.S.C. § 3733(j)(1).  (Doc. 1 at 2).  CID No. 2017-001 was issued on January 12, 2017 to Advanced Pain seeking documents relevant to an investigation into whether Advanced Pain, its affiliated entities, and managing principals violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b.  (*Id.*).

Advanced Pain is a pain management medical practice wholly owned by Michael Frey, M.D. and Jonathan Daitch, M.D.  (*Id.* at ¶ 8).  In 2015, agents of the Defense Criminal Investigative Services and the Department of Health and Human Services, Office of Inspector General, in conjunction with the United States Attorney's Office for the Middle District of Florida, began investigating Advanced Pain.  (*Id.* at ¶ 9).  The investigation relates to possible violations of the AKS based upon the submission of claims for potentially medically unnecessary procedures and the possible overutilization of urine drug testing.  (*Id.*).

As part of this investigation, the former United States Attorney for the Middle District of Florida, A. Lee Bentley, III, executed the CID for documents on January 10, 2017, under his authority as the Attorney General's designee.  (*Id.* at ¶ 10 (citing 31 U.S.C. § 3733(a)(l) and Attorney General Order No. 3134-2010)).  Counsel for Advanced Pain accepted service on January 12, 2017.  (*Id.*).

In pertinent part, the CID requests:

8. All email communications with Physicians Resource Center, LLC, including, but not limited to:

a. All October 19, 2015 emails from or to, among others, Rochelle Cannon regarding employee incidents and corrective action.

b. All November 17, 2015 emails from or to, among others, Rochelle Cannon regarding billing for urine testing.

c. All November 18, 2015 emails from or to, among others, Rochelle Cannon regarding drug screening or UDT billing.

d. All January 15, 2016, emails from or to, among others, Rochelle Cannon regarding employee incident.

e. All February 11, 2016 emails from or to, among others, Rochelle Cannon regarding determination of economic hardship.

f. All April 5-6, 2016 emails from or to, among others, Rochelle Cannon regarding laboratory operations.

g. All August 5, 2016 emails from or to, among others Rochelle Cannon regarding addendum to contract.

(*Id.* at ¶ 12; *see also* Doc. 1-1 at 9).

Advanced Pain refused to produce certain documents on the basis of the corporate attorney-client privilege. (*Id.* at ¶ 13). Specifically, Advanced Pain is withholding email communications involving employees of Physicians Resource, LLC ("Physicians Resource") and Barbara Daitch. (*Id.*). Physicians Resource is a third-party medical billing company located in Ormond Beach, Florida that was contracted by Advanced Pain in August 2015. (*Id.*). Rochelle Cannon ("Cannon") is the principal of Physicians Resource. (*Id.* at 10). Barbara Daitch ("Barbara") is the wife of Dr. Jonathan Daitch, but was neither an employee nor an independent contractor for Advanced Pain. (*Id.* at ¶ 15). The Government contests Advanced Pain's position that communications may be withheld because of the corporate attorney-client privilege. (*Id.* at 1).

Advanced Pain produced a privilege log. (*See* Doc. 1-2). At issue are documents numbered 1, 4-14, 16-22, 26, 63-71, and 74-87, as they appear on the privilege log. (Doc. 1 at ¶ 13).

In terms of relief, the United States requests in its Petition that the Court:

enter an order directing Advanced Pain to show cause why CID No. 2017-001 should not be enforced as to all of the documents it is withholding as privileged involving either employees of Physicians Resource or Barbara Daitch, including documents numbered 1, 4-14, 16-22, 26, 63-71, and 74-87 from Advanced Pain's privilege log.

(*Id.* at 25).

Alternatively, "and only to the extent Court finds that Advanced Pain's attorney-client privilege could possibly extend to cover these non-employed third parties," the United States requests that the Court "enter an order directing Advanced Pain to submit the documents identified on its privilege log to the Court for an *in camera* review to determine whether the documents would otherwise be covered by Advanced Pain's attorney-client privilege." (*Id.*).

## II.    Legal Standards

The Department of Justice is tasked with investigating violations of the FCA. *See* 31 U.S.C. § 3730(a). A civil investigative demand is a tool used by the Government to investigate potential violations of the FCA. *See* 31 U.S.C. § 3733. CIDs may seek production of documentary material for inspection and copying. 31 U.S.C. § 3733(a)(l)(A). In making a demand, the CID must:

(i) describe each class of documentary material to be produced with such definiteness and certainty as to permit such material to be fairly identified;

(ii) prescribe a return date for each such class which will provide a reasonable period of time within which the material so demanded may be assembled and made available for inspection and copying; and

(iii) identify the false claims law investigator to whom such material shall be made available.

31 U.S.C. § 3733(a)(2)(B).

If a person does not comply with the demand, then the statute provides a means for enforcing the CID. 31 U.S.C. § 3733(j)(1). Specifically, the statute provides:

Whenever any person fails to comply with any civil investigative demand issued under subsection (a), or whenever satisfactory copying or reproduction of any material requested in such demand cannot be done and such person refuses to surrender such material, the Attorney General may file, in the district court of the United States for any judicial district in which such person resides, is found, or transacts business, and serve upon such person a petition for an order of such court for the enforcement of the civil investigative demand.

*Id.*

Although the Government may move to enforce the CID, the statute nonetheless provides protections for privileged documents. *See id.* § 3733(b). In particular, the statute provides:

A civil investigative demand issued under subsection (a) may not require the production of any documentary material, the submission of any answers to written interrogatories, or the giving of any oral testimony if such material, answers, or testimony would be protected from disclosure under—

(A) the standards applicable to subpoenas or subpoenas duces tecum issued by a court of the United States to aid in a grand jury investigation; or

(B) the standards applicable to discovery requests under the Federal Rules of Civil Procedure, to the extent that the application of such standards to any such demand is appropriate and consistent with the provisions and purposes of this section.

*Id.*

At issue in this case is the attorney-client privilege. Both parties agree that the federal law of privilege governs the materials requested by the CID. (Doc. 1 at 12 and Doc. 7 at 10 (both citing *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) for the proposition that federal privilege law applies to the CID)). Under federal common law, "[t]he attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990) (citation and quotation marks omitted). A claim of attorney-client privilege requires proof that:

(1) the asserted holder of the privilege is or sought to become a client;

> (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
>
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (citing *United States v. Jones*, 517 F.2d 666, 670 (5th Cir. 1975)).[2]  The party invoking the privilege bears the burden of proving that an attorney-client relationship exists and that communications were confidential.  *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991).

Moreover, Advanced Pain is a corporation.  As such, the United States Supreme Court's seminal decision in *Upjohn Company v. United States* concerning the attorney-client privilege applies.  *See* 449 U.S. 383 (1981).  *Upjohn* held that communications made by corporate employees to counsel – at the direction of corporate superiors in order to secure legal advice from counsel and with the employees being sufficiently aware that the corporation was seeking the information so that it could obtain legal advice – are protected against compelled disclosure.  *See id.* at 394-95.  The applicability of the attorney-client privilege in this context is determined on a case-by-case basis.  *See id.* at 396-97.

Notably, here, Advanced Pain seeks to extend the privilege to independent contractors, consultants, or anyone acting as the functional equivalent of an employee.  (*See* Doc. 7 at 12).  Neither the United States Supreme Court nor the Eleventh Circuit Court of Appeals has

---

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

addressed this scenario specifically. Even so, there is persuasive circuit-level authority outside of the Eleventh Circuit. Indeed, both parties cite to an Eighth Circuit case, *In re Bieter Company*, 16 F.3d 929 (8th Cir. 1994), as persuasive authority on this issue. (Doc. 1 at 6; Doc. 7 at 17).

In *Bieter*, the Eighth Circuit vacated the district court's order holding that the attorney-client privilege did not apply to an independent consultant's communications with the client corporation's legal counsel. *Id*. at 941. Specifically, a party challenged application of the privilege to communications between the corporation's counsel and an independent contractor hired to provide advice and guidance regarding commercial and retail development. *Id*. at 933. In upholding the claim of privilege, the Eighth Circuit found that "when applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead and for whatever reason employed as independent contractors." *Id*. at 937.

The court in *Bieter* reasoned that this distinction was inappropriate because non-employee representatives, who have a significant relationship or intimate involvement with the client corporation, possess relevant information needed by the client corporation's counsel for proper legal advice. *See id*. at 938. The court found that communications between corporate counsel and the independent consultant were within the scope of the attorney-client privilege because the independent consultant was the "functional equivalent of an employee." *Id.* at 938. Finding that the independent contractor was the "functional equivalent of an employee," the court then analyzed the claim of attorney-client privilege as if the independent contractor were any other employee of the corporation, utilizing a five-factor test. *Id.* at 938-40 (applying the

test from *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977)). Finding the five factors met, the court upheld the claim of privilege. *Id.* at 939-40.

Although the Eleventh Circuit has not spoken on the precise issue presented here, district courts within the Eleventh Circuit, including one decision from this Court, have found *Bieter* persuasive. *See, e.g.*, *Every Penny Counts, Inc. v. Am. Exp. Co.*, No. 807-cv-1255-T-26MAP, 2008 WL 2074407, at *2 (M.D. Fla. May 15, 2008) (Lazzara, J.) (extending attorney-client privilege to communications between a de facto consultant and the corporation's counsel); *see also Hope For Families & Cmty. Serv., Inc. v. Warren*, No. 3:06-cv-1113-WKW, 2009 WL 1066525, at *10 (M.D. Ala. Apr. 21, 2009) (finding *Bieter's* thorough analysis and reasoning persuasive and upholding the claim of privilege for communications between a corporation's counsel and an outside consultant).

Consistent with these decisions, the Undersigned also finds *Bieter's* thorough analysis and reasoning persuasive. Indeed, *Bieter* appears to the Undersigned to be consistent with the Eleventh Circuit's precedent regarding the attorney-client privilege and the Supreme Court's decision in *Upjohn*. *See Upjohn*, 449 U.S. at 383; *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d at 1042. Moreover, the parties have not cited and the Undersigned has not found any decision by or within the Eleventh Circuit rejecting *Bieter*. *See Hope For Families*, 2009 WL 1066525, at *10 n.13 (noting that the parties had not cited nor had the court found any published Eleventh Circuit decisions applying *Bieter*). The Undersigned, therefore, applies the *Bieter* "functional equivalent" test to Advanced Pain's claim of privilege here.

In applying the *Bieter* test, the Undersigned first evaluates whether Advanced Pain has met its burden of showing that Cannon and Barbara each were the "functional equivalent of an employee." *See Bieter*, 16 F.3d at 938-40. If yes, then the Court must analyze Advanced Pain's

claim of the corporate attorney-client privilege utilizing *Bieter's* five-factor test as if Cannon and Barbara were any other employee of Advanced Pain. *See id.*[3] If all five factors are met, then Advanced Pain may claim the privilege for communications between Cannon and/or Barbara and counsel. *See id.* If, however, Advanced Pain has failed to meet its burden of proving that the non-employees were the "functional equivalent of an employee" or any of the remaining five factors, then Advanced Pain cannot maintain the privilege and should be required to disclose the emails in response to the CID. *See id.*

## III.   Factual Allegations

Before applying the *Bieter* test, the Undersigned summarizes the parties' relevant factual allegations.

### A.   Advanced Pain's Factual Allegations

Advanced Pain submitted affidavits from four individuals. The first is from Jonathan Daitch, physician and co-founder of Advanced Pain. (Doc. 7-1). The second affidavit is from David Vaughn, an attorney licensed in Louisiana who provided compliance advice to Advanced Pain. (Doc. 7-2). The third affidavit is from Geralyn Noonan, counsel for Advanced Pain representing it in employment and labor law matters. (Doc. 7-3). Finally, Advanced Pain submitted the affidavit of Elizabeth Kagan, counsel for Advanced Pain representing it in civil litigation and providing legal advice on employment issues and contracts. (Doc. 7-4).

So far, Advanced Pain has provided over 22,000 pages of documents to the United States relating to the CID. (Doc. 7 at 4). Advanced Pain is withholding certain other documents identified on its privilege log pursuant to the corporate attorney-client privilege. (*Id.*).

---

[3] The five factors are listed in Part IV.B. below.

Advanced Pain claims privilege with regard to email communications between its outside legal counsel and employees of Physicians Resource and Barbara Daitch. (*Id.*).

Advanced Pain is a medical practice providing medical care to thousands of patients in Southwest Florida. (Doc. 7-1 at ¶ 5). Advanced Pain treats patients for various pain-related conditions. (*Id.*) Advanced Pain's owners and principals are Dr. Daitch and Dr. Frey, pain management physicians who diagnose and treat patients with acute and chronic pain. (*Id.* at ¶¶ 3-4). Advanced Pain employs over seventy-five (75) employees, agents, and independent contractors. (*Id.* at ¶ 8). Advanced Pain routinely delegates certain administrative and managerial tasks to these employees, agents, and independent contractors and regularly authorizes and directs them to interface with outside legal counsel to seek legal advice on behalf of the company. (*Id.* at ¶¶ 9-10).

Cannon was hired as an independent contractor who, through her company Physicians Resource, was engaged by Advanced Pain to provide medical billing services, including managing the entire accounts receivable process for Advanced Pain. (*Id.* at ¶ 11). Through her company, Cannon submitted claims for medical services for reimbursement to insurance carriers, reviewed claims in order to ensure that claim submissions were in compliance with all applicable health care billing regulations, reviewed claim denials and filed appeals, trained employees of Advanced Pain to properly document medical records for the submission of claims for reimbursement, and handled patient billing inquiries. (*Id.* at ¶ 17). Cannon was hired in lieu of an "in house" billing department. (*Id.* at ¶ 18).

Cannon worked from a remote location. (*Id.* at ¶ 19). Despite this, Cannon had full access to Advanced Pain's electronic medical records and financial information. (*Id.* at ¶ 20). Cannon was in daily contact with Advanced Pain's employees. (*Id.*). Cannon's primary

responsibility was submitting claims for reimbursement to insurance carriers. (*Id.*). As part of this, Cannon communicated regularly with Advanced Pain's outside counsel to ensure that billing practices were compliant with all applicable laws, rules, and regulations. (*Id.*). Because of the complexity of her duties, Advanced Pain directed Cannon to interface with outside counsel for legal issues involving compliance with health care laws and regulations, compliance with and interpretation of insurance contracts, interpretation and knowledge of Medicare Administrative Contractor Local Coverage Determination ("MAC LCD"), general billing issues, and employee compliance with health care laws and regulations. (*Id.* at ¶ 22).

Advanced Pain expected Cannon to keep all communications and correspondence between her and outside counsel strictly confidential. (*Id.* at ¶ 23). Advanced Pain's principals had no reason to believe that Cannon did not keep such communications strictly confidential. (*Id.* at ¶ 24). Cannon often sought legal advice from outside counsel to perform her duties on behalf of Advanced Pain. (*Id.* at ¶ 26). Cannon procured legal advice from outside counsel regarding billing compliance issues, interpretation of MAC LCDs, Medicare contracts, and employee compliance with healthcare laws and regulations. (*Id.*). Without Cannon's communication with outside counsel, Advanced Pain would not have been able to procure necessary legal advice. (*Id.* at ¶ 27).

Barbara is Dr. Daitch's wife and a co-founder of Advanced Pain. (*Id.* at ¶ 28). Barbara was not on Advanced Pain's payroll but was an authorized agent or representative of the company. (*Id.* at ¶ 28). Although Barbara was a former employee of Advanced Pain, she was not formally an employee or independent contractor of Advanced Pain at the time of the Petition. (*Id.* at ¶ 12). Barbara had extensive knowledge of Advanced Pain's day-to-day operations, including management, human resources, and marketing issues. (*Id.* at ¶¶ 12, 29). Barbara has

acted as an office manager or human resources director on an as-needed basis, particularly at times when Advanced Pain did not have employees fulfilling these roles. (*Id.* at ¶¶ 12, 30). Barbara was treated as an employee and member of Advanced Pain's management-level personnel, even though she did not receive financial compensation. (*Id.* at ¶ 12).

Advanced Pain authorized and directed Barbara to interface with outside counsel for legal issues involving employment law and human resource issues. (*Id.* at ¶ 31). Advanced Pain expected Barbara to keep all communications and correspondence between her and outside counsel strictly confidential. (*Id.* at ¶ 32). Advanced Pain's principals had no reason to believe Barbara failed to keep all such communications strictly confidential. (*Id.* at ¶ 33). Barbara procured legal advice from outside counsel regarding employee agreements, independent contractor contracts, employee performance and possible disciplinary actions, and employee compliance with the corporate Code of Conduct and healthcare laws and regulations. (*Id.* at ¶ 35). Without Barbara's communication and interface with outside counsel, Advanced Pain would not have been able to procure necessary legal advice. (*Id.* at ¶ 36).

Cannon and Barbara were specifically authorized and directed by Advanced Pain's principals to communicate with outside counsel on behalf of Advanced Pain to further its legal, medical, and business interests and objectives. (*Id.* at ¶ 13). A significant portion of their responsibilities included interfacing with and procuring legal advice from outside counsel, on behalf of Advanced Pain, for a variety of matters. (*Id.* at ¶ 14). Advanced Pain expected Cannon and Barbara to perform these functions to protect its interests. (*Id.*). Dr. Daitch and Dr. Frey were aware and directed Cannon and Barbara to perform such functions. *Id.*

In addition, Advanced Pain's outside counsel were aware that Cannon and Barbara were authorized to speak with them on behalf of the company. (*Id.* at ¶ 15). Advanced Pain's

principals had every expectation that communications between Cannon and/or Barbara and outside counsel would be treated as confidential and protected by the attorney-client privilege. (*Id.* at ¶ 37). Advanced Pain's outside counsel would not have spoken with Cannon or Barbara if there had been any doubt as to Cannon's and Barbara's authorization to communicate regarding legal matters. (*Id.* at ¶ 16). Dr. Daitch and Dr. Frey would not have allowed Cannon or Barbara to communicate with outside counsel if those communications were not protected by the attorney-client privilege. (*Id.*). Additionally, Advanced Pain's legal counsel – including of David Vaughn, Geralyn Noonan, and Elizabeth Kagan – understood that Cannon and Barbara were authorized representatives and that all communications between them were to be treated as confidential. (*See* Doc. 7-2; Doc. 7-3; Doc. 7-4).

## B. The United States' Factual Allegations

The United States produced an affidavit from Rochelle Cannon (Doc. 14-1), excerpts of Barbara Daitch's deposition transcript (Doc. 14-2), and materials submitted as exhibits to the Petition (Doc. 1).

In pertinent part, Cannon states that communicating with Advanced Pain's outside counsel was not part of Physicians Resource's regular duties. (Doc. 14-1 at ¶ 3). Cannon states that Physicians Resource was capable of performing its services for Advanced Pain without the assistance of Advanced Pain's outside counsel. (*Id.* at ¶ 6). Cannon also states that "there was no reason for Physicians Resource to seek legal advice from Advanced Pain's outside counsel, and interfacing with Advanced Pain's outside counsel was not part of my or Physicians Resource's responsibilities." (*Id.*).

Further, Cannon states that "Physicians Resource was never given blanket authorization to confer with Advance Pain's outside counsel at our discretion." (*Id.* at ¶ 7). Cannon states that

neither she nor employees of Physicians Resource often sought legal advice from Advanced Pain's outside counsel in order to perform their duties. (*Id.*). Cannon states that only once was she instructed to contact David Vaughn directly regarding a specific billing issue. (*Id.*). Cannon states that she did not have regular daily communications with Advanced Pain, was not permitted to give directions to Advanced Pain employees, and never had full access to Advanced Pain's electronic medical records or financial information. (*See id.* at ¶¶ 3, 4, 8, 9).

Additionally, the Government provided Barbara's deposition transcript. (Doc. 14-2). Barbara testified that she did not consider herself to be an ultimate decision maker at Advanced Pain because the doctors owned the practice and made the decisions. (*Id.* at 6, p. 34:18-21). Barbara testified that she did not attend manger meetings, nor did any employee report to her directly. (*Id.* at 9, 11, pp. 52:22-24, 88:1-17). Barbara also testified that the only person who requested that she do anything for Advanced Pain was her husband. (*Id.* at 12-13, p. 162:1-3).

Moreover, Barbara testified that she rarely had any direct communication with David Vaughn. (*Id.* at 8, p. 36:14-21). Barbara testified that she had approximately ten communications with Mr. Vaughn since 2002. (*Id.*, p. 36:22-24). Barbara testified that she viewed her role at Advanced Pain as a "fixer." (*Id.* at 14, p. 48:4-11). Barbara testified that she identified issues or problems at Advanced Pain and made them "go away." (*Id.*).

## IV. Analysis

In applying the *Bieter* test, the Court first evaluates whether Advanced Pain has met its burden of showing that Cannon and Barbara were the "functional equivalent of an employee" of Advanced Pain. *See Bieter*, 16 F.3d at 938-40. If so, then the Court applies *Bieter's* five-factor test to analyze Advanced Pain's claim of attorney-client privilege as if Cannon and Barbara were employees of the corporation. *See id.* The Undersigned applies the *Bieter* test below.

A.    **Functional Equivalent of an Employee**

In *Bieter*, the court found that the corporate attorney-client privilege may extend to individuals who are the "functional equivalent of an employee." *See id.* at 938. Yet the court did not specifically indicate what facts would satisfy this standard. *See id.* Instead, the court focused on certain facts in the case before it. *See id.*

For instance, the court noted that the independent contractor had been involved on a daily basis with the corporation's principals and on the corporation's behalf for the unsuccessful development that was the basis of the litigation. *Id.* Indeed, the court noted that the corporation had been formed with a single objective, and the independent contractor had been intimately involved in the attempt to achieve that objective. *Id.* The court further noted that the independent contractor had been the corporation's sole representative at meetings and likely possessed information possessed by no other person. *Id.* Given these facts, the Court found that there was "no principled basis to distinguish [the independent contractor's] role from that of an employee, and his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the corporation's] reasons for seeking representation." *Id.*

While the court in *Bieter* focused heavily on the specific facts of that case in determining whether the independent contractor was the functional equivalent of an employee, at least one jurist of this Court has adopted a slightly modified approach to the question.

In *Every Penny Counts, Inc. v. American Express Company*, United States District Judge Richard A. Lazzara held that the attorney-client privilege could extend to communications between a de facto consultant and a corporation's counsel. 2008 WL 2074407, at *2-3 (applying *Bieter*, 16 F.3d at 938). In reaching this conclusion, Judge Lazzara applied a three-prong test

taken from a United States Court of Federal Claims decision in *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 490 (2000)[4] to ascertain whether the outside consultant was the functional equivalent of an employee under a *Bieter* analysis.  *See* 2008 WL 2074407, at *3. This test evaluates whether the non-employee (1) possessed decision making responsibility regarding the matter about which legal help was sought, (2) was implicated in the chain of command relevant to the subject matter of the legal services, or (3) was personally responsible for or involved in the activity that might lead to liability for the corporation.  *See Energy Capital Corp.*, 45 Fed. Cl. at 490 (citation omitted).

In finding that the attorney-client privilege extended to the consultant, Judge Lazzara effectively adopted the three-prong test from *Energy Capital Corp.  See Every Penny Counts*, 2008 WL 2074407, at *3.  In his discussion, Judge Lazzara found that the three prongs are independent of each other and that the presence of any one ground satisfies the attorney-client relationship.  *Id.*  Citing the consultant's deposition testimony indicating that the consultant essentially shared in the decision-making responsibility of writing and enumerating the claims at issue, Judge Lazzara found that the consultant's testimony satisfied the first and third prongs— *i.e.*, that the consultant possessed decision-making responsibility and that the consultant may have personal responsibility and/or involvement in the activity that might lead to corporate liability.  *Id.*

The Undersigned finds the above-cited cases persuasive and instructive in evaluating whether Cannon and Barbara are functionally equivalent to employees.  The Undersigned finds the *Energy Capital Corp.* test especially persuasive.  *See Every Penny Counts*, 2008 WL

---

[4]  *Energy Capital Corp.* itself relied heavily on *Bieter.  See Energy Capital Corp.*, 45 Fed. Cl. at 489-91.

2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490. The *Energy Capital Corp.* test highlights three distinct situations where a non-employee may be appropriately considered the functional equivalent of an employee because of the nature of the relationship or the involvement of the non-employee with the subject matter at issue. *See id.* The Undersigned finds it appropriate, therefore, to apply the *Energy Capital Corp.* test to determine whether to extend the attorney-client privilege to Cannon and Barbara, the non-employees at issue.

As such, Cannon and Barbara may each be considered the functional equivalent of an employee if the specific facts of this case illustrate that they (1) possessed decision making responsibility regarding the matter about which legal help was sought, (2) were implicated in the chain of command relevant to the subject matter of the legal services, or (3) were personally responsible for or involved in the activity that might lead to liability for the corporation. *See Bieter*, 16 F.3d at 938; *Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490.

### 1. Rochelle Cannon

As to Cannon, the Undersigned finds that Advanced Pain has met its burden of showing that she was the functional equivalent of an employee. Although Cannon was an independent contractor, she provided medical billing services, including managing the entire accounts receivable process for Advanced Pain. (Doc. 7-1 at ¶ 11). Indeed, Advanced Pain's corporate superior, Dr. Daitch, states that Cannon was hired in lieu of an "in house" billing department. (*Id.* at ¶ 18). Moreover, despite working from a remote location, Cannon had access to electronic medical records and financial information of Advanced Pain. (*Id.* at ¶ 20). Additionally, Dr. Daitch states that Cannon was in daily contact with Advanced Pain's employees. (*Id.*).

Given these facts, the Undersigned finds no principled basis to distinguish Cannon's role from that of an employee, and her involvement in the subject of the litigation makes her precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand Advanced Pain's reasons for seeking representation. *See Bieter*, 16 F.3d at 938; *Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490. Indeed, the CID seeks information regarding claims for potentially medically unnecessary procedures and the possible overutilization of urine drug testing. (Doc. 1 at ¶ 9). This appears to be related to Cannon's role at Advanced Pain dealing with medical billing. As a result, much like the de facto consultant in *Every Penny Counts*, the Undersigned finds that Cannon may possess decision making responsibility regarding the matter about which legal help is sought and also may be personally responsible for or involved in the activities that might lead to liability for the corporation here. *See* 2008 WL 2074407, at *2-3. As such, it is appropriate to consider Cannon the functional equivalent of an employee.

The United States' countervailing affidavit from Cannon does not sufficiently undermine this conclusion. In her affidavit, Cannon states that contacting Advanced Pain's outside counsel was not part of Physicians Resource's regular duties and that Physicians Resource could perform its services for Advanced Pain without the assistance of Advanced Pain's outside counsel. (Doc. 14-1 at ¶¶ 3, 6). Moreover, Cannon states that she did not have regular daily communications with Advanced Pain, was not permitted to give directions to Advanced Pain employees, and never had full access to Advanced Pain's electronic medical records or financial information. (*See id.* at ¶¶ 3, 4, 8, 9).

Notwithstanding these facts, the Undersigned finds that, similar to *Bieter*, *Every Penny Counts*, and *Energy Capital Corp.*, the key issue here is that Cannon's involvement in the subject

matter of the litigation makes her precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand Advanced Pain's reasons for seeking representation. *See Bieter*, 16 F.3d at 938; *Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490. Thus, even assuming Cannon's affidavit is fully credited, the Undersigned finds that it is appropriate to consider Cannon the functional equivalent of an employee given her role in the subject matter of this litigation. *See id.*

### 2. Barbara Daitch

Similar to Cannon, the Undersigned finds that Barbara Daitch should also be considered the functional equivalent of an employee. Although Barbara was not on Advanced Pain's payroll, Dr. Daitch's affidavit makes clear that she was an authorized agent or representative of Advanced Pain. (Doc. 7-1 at ¶ 28). Barbara testified that she viewed her role at Advanced Pain as a "fixer." (Doc. 14-2 at 14, p. 48:4-11). Barbara identified issues or problems and made them "go away." (*Id.*). This is consistent with Dr. Daitch's affidavit, which states that Barbara acted as an office manager or human resources director on an as-needed basis, particularly at times when Advanced Pain did not have employees fulfilling these roles. (Doc. 7-1 at ¶ 12, 30). Barbara appears to have had extensive knowledge of Advanced Pain's day-to-day operations, including management, human resources, and marketing issues. (*Id.* at ¶¶ 12, 29). Thus, it appears that Barbara was similar to an employee or member of Advanced Pain's management-level personnel, even though she did not receive financial compensation. (*See id.* at ¶ 12).

Given these facts, the Undersigned finds no principled basis to distinguish Barbara's role from that of an employee, and her involvement in the subject matter of the litigation makes her precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand Advanced Pain's reasons for seeking representation. *See Bieter*, 16 F.3d at 938;

*Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490. Indeed, these facts seemingly show that all three factors of the *Energy Capital Corp.* test may be met because Barbara appeared to possess decision-making responsibility regarding the matter about which legal help is sought, may be implicated in the chain of command relevant to the subject matter of the legal services, and could be personally responsible for or involved in the activity that might lead to liability for the corporation. *See Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490. As such, the Undersigned finds that it is appropriate to consider Barbara the functional equivalent of an employee. *See Bieter*, 16 F.3d at 938; *Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490.

As with Cannon, the United States' reliance on certain deposition testimony does not undermine this conclusion. The United States is correct that Barbara testified that she did not consider herself to be an ultimate decision maker at Advanced Pain. (Doc. 14-2 at 6, p. 34:18-21). Barbara also testified that she did not attend manger meetings nor did any employee report to her directly. (*Id.* at 9, 11, pp. 52:22-24, 88:1-17). Notwithstanding this testimony, the Undersigned finds that the key issue here is that Barbara's involvement in the subject matter of the litigation makes her precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand Advanced Pain's reasons for seeking representation. *See Bieter*, 16 F.3d at 938; *Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490. Thus, the Undersigned finds that it is appropriate to consider Barbara the functional equivalent of an employee. *See id.*

**B.     Five-factor test**

Having found that Cannon and Barbara are both the functional equivalent of an

employee, the Court would next need to address the five-factor test from *Bieter*, which holds that

the attorney-client privilege applies to non-employees when:

> (1) the communication was made for the purpose of securing legal advice;
>
> (2) the non-employee making the communication did so at the direction of a corporate superior;
>
> (3) the superior made the request so that the corporation could secure legal advice;
>
> (4) the subject matter of the communication is within the scope of the non-employee's duties; and
>
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, needed to know of its contents.

*See* 16 F.3d at 938-40.

Unfortunately, the Court lacks sufficient information at this time to determine whether

the documents – as described in the privilege log at issue – satisfy each of these factors.

Importantly, the United States does not appear to challenge with any specificity the sufficiency

of the privilege log itself.  Instead, the United States asks the Court:

> in the alternative, and only to the extent Court finds that Advanced Pain's attorney-client privilege could possibly extend to cover these non-employed third parties, enter an order directing Advanced Pain to submit the documents identified on its privilege log to the Court for an *in camera* review to determine whether the documents would otherwise be covered by Advanced Pain's attorney-client privilege.

(Doc. 1 at 25).

As discussed above, the Undersigned finds that Advanced Pain's attorney-client privilege

extends to cover Cannon and Barbara because they are each the functional equivalent of an

employee.  To determine whether the specific email communications at issue are privileged will

require an *in camera* review.  Consistent with the alternative relief sought by the United States,

therefore, the Undersigned recommends that Advanced Pain be required to submit the disputed email communications identified on its privilege log to the Court for an *in camera* review. After Advanced Pain submits the documents, the presiding District Judge may re-refer this matter to the Undersigned to evaluate whether the documents satisfy the *Bieter* five-factor test.[5]

## V.  Conclusion

For the reasons discussed above, the Undersigned finds that the attorney-client privilege may be extended to communications involving Rochelle Cannon and Barbara Daitch because, even though they were not employees of Advanced Pain, they were each the functional equivalent of an employee under the rationale of *Bieter* and *Energy Capital Corp. See Bieter*, 16 F.3d at 938; *Every Penny Counts*, 2008 WL 2074407, at *2-3; *Energy Capital Corp.*, 45 Fed. Cl. at 490. Because the attorney-client privilege may be extended to Rochelle Cannon and Barbara Daitch, the Undersigned recommends that the United States' Petition be denied to the extent that it categorically requests that the Court enter an order directing Advanced Pain to show cause why the CID should not be enforced as to all of the documents it is withholding as privileged involving either employees of Physicians Resource or Barbara Daitch. (*See* Doc. 1 at 25).

As explained above, however, the Undersigned finds that the alternative relief sought by the United States should be granted. (*See id.*). Specifically, the Undersigned finds that the disputed email communications should be submitted to the Court for an *in camera* review to determine whether the documents are, in fact, privileged under *Bieter's* five-factor test. Accordingly, the Undersigned recommends that Advanced Pain be required to submit the

---

[5]  Although it may have been more efficient for the Undersigned to order the disputed documents to be filed under seal before entering this Report and Recommendation, the Undersigned deemed it prudent to address the United States' categorical challenge to the invocation of the attorney-client privilege and to allow the Government to pursue any objections to the presiding District Judge first before resorting to the Government's alternative request for relief.

disputed email communications identified on its privilege log to the Court for an *in camera* review—specifically, documents numbered 1, 4-14, 16-22, 26, 63-71, and 74-87. The Undersigned recommends that the Court require the documents to be provided to the Court within fourteen (14) days after the entry of any Order adopting this Report and Recommendation. Additionally, the Undersigned further recommends that the Court refer the matter of the *in camera* review to the Undersigned for issuance of a further Report and Recommendation.

As a final matter, the Undersigned believes that additional briefing would be helpful to clarify whether the privilege applies to the subject email communications. As a result, if the presiding District Judge adopts this Report and Recommendation, then the Undersigned recommends that the parties be required to submit supplemental briefing addressing the application of *Bieter*'s five-factor test to the specific email communications at issue. The Undersigned further recommends that the Court require that Advanced Pain – as the party with the burden of demonstrating that the documents are privileged – file its supplemental brief within fourteen (14) days after the entry of any Order adopting this Report and Recommendation, and that the United States file its supplemental brief no later than fourteen (14) days after the submission of Advanced Pain's briefing.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1) The United States of America's Petition to Enforce Civil Investigative Demand (Doc. 1) be **GRANTED IN PART** and **DENIED IN PART** as set forth above.

2) Advanced Pain be required to submit the disputed documents identified on its privilege log to the Court for an *in camera* review—specifically, documents

numbered 1, 4-14, 16-22, 26, 63-71, and 74-87—within fourteen (14) days after the entry of any Order adopting this Report and Recommendation.

3) If the presiding District Judge adopts this Report and Recommendation, then the Court refer the matter of the *in camera* review to the Undersigned for a further Report and Recommendation.

4) If the presiding District Judge adopts this Report and Recommendation, then the Court require the parties to submit supplemental briefing as recommended above.

Respectfully recommended in Chambers in Fort Myers, Florida on June 28, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties